# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

SAMANDAR JUMAKUL UGLI
TULYAKOV,

     Petitioner,

     v.

CHRISTOPHER LAROSE, Warden,
Otay Mesa Detention Center; DANIEL
A. BRIGHTMAN, Field Office Director,
Enforcement and Removal Operations,
Immigration and Customs Enforcement;
TODD M. LYONS, Acting Director,
Immigration and Customs Enforcement;
ACTING SECRETARY, Department of
Homeland Security; TODD BLANCHE,
Attorney General, Department
of Justice; U.S. DEPARTMENT OF
HOMELAND SECURITY; and U.S.
IMMIGRATION AND CUSTOMS
ENFORCEMENT;

     Respondents.

Case No.:  3:26-cv-01695-BTM-BLM

**ORDER GRANTING IN PART AND
DISMISSING IN PART PETITION
FOR WRIT OF HABEAS CORPUS**

**[ECF NO. 1]**

//

//

26-cv-1695

Pending before the Court is Samandar Tulyakov's petition for the writ of habeas corpus pursuant to 28 U.S.C. § 2241.  For the reasons stated below, the Court GRANTS IN PART and DISMISSES IN PART the petition and orders Tulyakov's immediate release from custody.

## I.   BACKGROUND

Tulyakov fled Uzbekistan and arrived at the U.S. border on January 7, 2025.  (ECF No. 1, ¶ 1–2.)  Immigration officials inspected him and determined that he did not pose a danger to the community or a flight risk.  (*Id.* ¶ 2.)  Tulyakov was then granted conditional release on his own recognizance and placed in 8 U.S.C. § 1229a removal proceedings.  (*Id.* ¶ 39–40.)  He attended all his scheduled immigration appointments.  (*Id.* ¶ 41.)  On January 14, 2025, Tulyakov applied for asylum.  (*Id.* ¶ 43.)  He later received work authorization from the Respondents.  (*Id.* ¶ 44.)

On January 11, 2026, Tulyakov parked his cab in a rest stop.  (*Id.* ¶ 45.)  Masked gunmen surrounded his cab, ordered him out, and took him into U.S. Immigration and Customs Enforcement custody.  (*Id.*)  Tulyakov was injured during the arrest and taken to the hospital for three days.  (*Id.*)  He was transferred first to Batavia Detention Center and later to Otay Mesa Detention Center.  (*Id.*)  Tulyakov remains in detention.  (*Id.* ¶ 4.)  He filed a petition for the writ of habeas corpus on March 17, 2026.  (*Id.* at 19.)

## II.   DISCUSSION

The Petitioner makes three claims.  First, the Petitioner argues that the Respondents violated the Administrative Procedure Act when they improperly revoked his parole.  (*Id.* ¶ 52–60.)  Second, that the Respondents violated the Due Process Clause of the Fifth Amendment by revoking his parole arbitrarily and without notice and opportunity to be heard.  (*Id.* ¶ 61–65.)  Third, that the Respondents violated the Fourth Amendment by arresting him without a valid warrant.  (*Id.* ¶ 66–72.)  The Petitioner requests that the Court grant him release on any claim.  The Respondents acknowledge that this Court has granted petitions with similar facts and legal issues.  (ECF No. 4 ("Return"), at 2.)  They "defer[] to the Court on the appropriate relief."  (*Id.*)

26-cv-1695

The Court finds that relief is warranted on the second claim because the Respondents improperly revoked the Petitioner's parole.  The Court declines to reach the first and third claims.

### A.    Due Process Parole Rights

The Fifth Amendment entitles noncitizens[1] "to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  Once a noncitizen "passe[s] through our gates," he may be removed "only after proceedings conforming to traditional standards of fairness encompassed in due process of law."  *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953).  Due Process also "protects noncitizens from unlawful detention during their removal proceedings."  *Esquivel Pacheco v. LaRose*, No. 25-cv-2421, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  Here, the Petitioner challenges his current detention as contrary to the Due Process Clause.

To determine the "specific dictates of due process" in this situation, the Court must consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  The Court adopts and applies the reasoning of the decisions *Noori v. LaRose*, 807 F. Supp. 3d 1146 (S.D. Cal. 2025), and *Esquivel Pacheco*, 2026 WL 242300.

First the Petitioner acquired a protected interest in being free from imprisonment once he was paroled into the country.  The Respondents granted the Petitioner conditional parole under 8 U.S.C. § 1226(a). (Return, 1.)  By exercising their discretion to do so, the

---

[1] This order uses the term "noncitizen" as equivalent to the statutory term "alien."  8 U.S.C. § 1101(a)(3); *see Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020).

26-cv-1695

Respondents made "at least an implicit promise that parole will be revoked only if [the Petitioner] fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The Petitioner relied on that promise and complied with his reporting conditions for the year he lived in the country. This created a "protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees." *Noori*, 807 F. Supp. 3d at 1165. That expectation of due process extends to his parole revocation.

Second, the Respondents' process of revoking the Petitioner's parole created a substantial risk that the Petitioner's liberty interest would be erroneously deprived. The Petitioner was given no prior notice that he would be placed under arrest. He was provided no paperwork or explanation for the arrest. Instead, he was surrounded, ordered out of his cab, and taken into custody. The record contains no indication that the Respondents arrested the Petitioner because he failed to report as ordered or had become a danger or flight risk that needed to be detained. Rather, it appears the Respondents "breached the 'implicit promise' made to Petitioner that he would enjoy this liberty as long as he did nothing to forfeit it." *Esquivel Pacheco*, 2026 WL 242300, at *6.

Third, the Respondents have not shown that their interest in immigration enforcement justifies the process used to detain the Petitioner. The Court acknowledges that holding a predeprivation hearing or providing notice "poses some degree of 'fiscal and administrative burden.'" *Esquivel Pacheco*, 2026 WL 242300, at *6 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). But the Respondents have not argued that the burden would be significant. Also, that burden must be balanced against the Petitioner's liberty interest and the procedural protections afforded that interest. Taken together, the Petitioner's interest outweighs the Respondents'.

The Petitioner entered the country on parole and was ordered to adhere to the conditions of that parole. In turn, "it cannot be too much to expect the government to turn square corners when it deals with" him. *Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021). The Respondents violated the Petitioner's due process rights by "detaining [him] without

26-cv-1695

justification." *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1158 (D. Minn. 2025). The Respondents do not contend that any changed circumstances warranted Petitioner's re-detention. The Respondents also do not contend that the Petitioner is a danger to the community or a flight risk. Thus, the writ must issue to release him from custody. The petition is granted on the second claim.

### B.   Other Claims

Because the Court grants the petition on other grounds, the Court declines to reach the merits of the Petitioner's Administrative Procedure Act and Fourth Amendment claims. Counts One and Three of the petition are dismissed without prejudice as moot.

### III.   CONCLUSION

The petition for a writ of habeas corpus is **GRANTED** on the second claim and the writ is **ISSUED**. The Respondents shall immediately release Tulyakov from custody on his preexisting conditions. The Respondents also shall return any papers taken from Tulyakov when he was detained. The first and third claims are **DISMISSED** without prejudice as moot. The parties shall file a statement as to the satisfaction of the writ by April 14, 2026, at 5 p.m. The Court retains jurisdiction to enforce the writ.

**IT IS SO ORDERED.**

Dated:  April 13, 2026

Honorable Barry Ted Moskowitz
United States District Judge

26-cv-1695